**BOUTIN JONES INC.**
Michael G. Cross, SBN 268999
Michael C. Hopkins, SBN 328995
555 Capitol Mall, Suite 1500
Sacramento, CA 95814-4603
T: (916) 321-4444/F: (916) 441-7597
Email: mcross@boutinjones.com
          mhopkins@boutinjones.com

Attorneys for Plaintiff Nation's Foodservice, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| NATION'S FOODSERVICE, INC., | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | 1. Fraudulent Inducement to Contract |
| CALISE PARTNERS, LLC, | 2. Fraud |
| Defendant. | 3. Negligent Misrepresentation |
| | 4. Rescission |
| | 5. Breach of Contract |
| | 6. Breach of Implied Covenant of Good Faith and Fair Dealing |
| | 7. Declaratory Relief |
| | 8. Violations of California Business & Professions Code §§ 17200 and 17500 |
| | **DEMAND FOR JURY TRIAL** |

## **COMPLAINT**

Plaintiff Nation's Foodservice, Inc. ("Nation's" or "Plaintiff"), by and through its attorneys of record, hereby alleges and complains against Defendant Calise Partners, LLC d/b/a Imaginuity ("Imaginuity," "Calise," or "Defendant") as follows:

### **NATURE OF THE ACTION**

1.  This action arises from Imaginuity's systematic fraud in inducing Plaintiff to enter into a Master Services Agreement ("MSA") for marketing services Imaginuity knew it could not

1. and would not deliver. Imaginuity made material misrepresentations regarding its proprietary technology, capabilities, and ability to deliver measurable business outcomes, none of which were true.

2. After Plaintiff terminated the MSA upon discovering Imaginuity's fraud, Imaginuity compounded its wrongdoing by asserting that an exhibit to the MSA—which by its express terms is "incorporated in and governed by" the MSA—somehow survived termination and automatically renewed. This, Imaginuity claimed, created a new obligation under which Plaintiff owed Imaginuity $141,570 for work Imaginuity never undertook. This assertion is legally baseless and constitutes a continuation of Imaginuity's pattern of deceptive conduct.

3. Plaintiff seeks compensatory damages, rescission of the MSA and all exhibits thereto, restitution, declaratory relief, and all other relief to which Plaintiff is entitled.

## PARTIES

4. Plaintiff Nation's Foodservice, Inc. is a California corporation with its principal place of business at 11090 San Pablo Avenue, Suite 200, El Cerrito, California 94530. Nation's operates a multi-location foodservice brand in California.

5. Defendant Calise Partners, LLC d/b/a Imaginuity is a Texas limited liability company with its principal place of business at 1201 Main Street, Suite 1800, Dallas, Texas 75202. Imaginuity holds itself out as a marketing and advertising agency providing creative, digital marketing, and media buying services.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7. Plaintiff is a citizen of California.

8. Plaintiff is informed and believes and thereon alleges that Defendant Calise Partners, LLC, is a citizen of Texas.

9. This Court has personal jurisdiction over Defendant because Defendant purposefully directed its activities at California, contracted with a California entity for the provision of services

1  to benefit that entity's California operations, caused tortious injury in California through acts
2  committed outside California while regularly doing or soliciting business in California, and derived
3  substantial revenue from goods used or consumed in California.

4  10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a
5  substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District,
6  including but not limited to the fraudulent inducement of Plaintiff to enter into the MSA and the
7  damages suffered by Plaintiff as a result of Imaginuity's conduct.

## DIVISIONAL ASSIGNMENT

11. Pursuant to Civil Local Rule 3-2(c), this action should be assigned to the Oakland Division of the Northern District of California. Plaintiff Nation's Foodservice, Inc. maintains its principal place of business at 11090 San Pablo Avenue, Suite 200, El Cerrito, California 94530. El Cerrito is located in Contra Costa County. Because Plaintiff resides in Contra Costa County, and because a substantial part of the events giving rise to this action occurred in Contra Costa County—including the negotiation and execution of the MSA, the receipt of Imaginuity's fraudulent representations, Plaintiff's reliance thereon, and the damages sustained as a result—assignment to the Oakland Division is appropriate under the Local Rules.

12. Additionally, the witnesses and documentary evidence relevant to this action are located in or near Contra Costa County. Plaintiff's executives who negotiated the MSA, received and relied upon Imaginuity's misrepresentations, and managed the relationship with Imaginuity are located in El Cerrito. The business records documenting Plaintiff's payments under the MSA and Imaginuity's failure to perform are maintained at Plaintiff's El Cerrito headquarters. Assignment to the Oakland Division will therefore serve the interests of justice and judicial economy by locating proceedings in the division most convenient to the parties, witnesses, and evidence.

## FACTUAL BACKGROUND

**A. The Parties' Relationship and Pre-Contractual Negotiations**

13. In the summer of 2024, Plaintiff Nation's entered into discussions with Imaginuity concerning the retention of Imaginuity to provide marketing services for Nation's multi-location foodservice brand.

14. During these discussions, Imaginuity, through its executives and representatives including Taylor Calise, CEO of Imaginuity, and Evan Meeks, Executive Director of Client Partnerships, made material representations to Plaintiff concerning Imaginuity's capabilities, technology, and ability to deliver results. These representations included, but were not limited, to Imaginuity's ability to drive measurable growth for multi-location brands, Imaginuity's ability to connect marketing spend to real, measurable business outcomes, Imaginuity's utilization of proprietary AI and predictive optimization tools that produce superior qualified leads and sales performance, and Imaginuity's ability to provide reliable and measurable return on investment.

15. On or around June 24, 2024, Taylor Calise and Evan Meeks held a meeting with Adam Smith, CEO and President of Nation's. At the meeting, Taylor Calise and Evan Meeks represented they had ideas that "would drive sales" to Nation's locations.

16. On August 28, 2024, Evan Meeks emailed Adam Smith with an "FTE Analysis" that made representations as to Imaginuity staffing on Nation's account, including that Imaginuity staff members with roles such as "Executive" and "Senior Director," would be working on the account.

17. These representations were made by persons with authority to bind Imaginuity, including its CEO, Taylor Calise, and were made with the intent to induce Plaintiff to enter into the MSA.

18. Plaintiff reasonably relied on these representations in deciding to enter into the MSA with Imaginuity. Plaintiff would not have entered into the MSA but for these representations.

**B.  The Master Services Agreement**

19. On or about August 29, 2024, in reliance upon Imaginuity's representations, Plaintiff entered into the MSA with Imaginuity. The MSA was signed by Adam Smith, CEO and President of Nation's, and Taylor Calise, CEO of Imaginuity. The MSA was to be effective on September 1, 2024.

20. Under the MSA, Imaginuity agreed to "consult with and assist [Plaintiff] in the development and/or execution of [Plaintiff's] objectives related to marketing [Plaintiff's] products and services."

///

21. The MSA provided for an Initial Term of twelve calendar months commencing on September 1, 2024, with automatic renewal for successive twelve-month terms unless either party provided written notice of termination no fewer than ninety (90) calendar days prior to the last day of the then-current term.

22. The MSA also allowed either party to terminate the agreement with ninety days' notice. In relevant part, the MSA stated: "if Client desires to terminate without cause during the Exhibit A Term, then Client shall provide written notice to Service Provider no fewer than ninety (90) calendar days prior to the termination date, and any such termination shall be effective as of the last day of the 90-calendar-day period."

23. The MSA also provided that termination based upon a party's breach "shall be immediate if a Party receives written notice of its breach of this Agreement and such Party fails to cure said breach within thirty (30) days of receipt of said notice."

24. The MSA expressly stated that "This Agreement and all Exhibits, all of which are incorporated herein by reference, supersede all prior agreements and understandings between the Parties hereto relating to the subject matter hereof."

**C. The Marketing Agreement – Exhibit A to the MSA**

25. Contemporaneous with the MSA, the parties executed Exhibit A – Service Provider's Statement of Agency Services ("Exhibit A"), effective September 1, 2024.

26. Exhibit A expressly states that it "shall be incorporated in and governed by the terms of that certain Master Services Agreement" between Plaintiff and Imaginuity.

27. Exhibit A provided for agency services—including account planning, account management, concept development, art direction, copywriting, production management, and social creative content—in exchange for a monthly fee of $60,222.

28. The term of Exhibit A was twelve calendar months (the "Initial Exhibit A Term"), with an automatic renewal provision requiring ninety (90) days' notice of intent to terminate.

29. Exhibit A expressly provided: "This Exhibit A shall remain in full effect until the expiration of the Exhibit A Term, unless terminated in accordance with the terms of the [Master Services] Agreement."

30. Because Exhibit A is expressly "incorporated in and governed by" the MSA, and because Exhibit A provides that it may be "terminated in accordance with the terms of the Agreement" (i.e., the MSA), termination of the MSA necessarily terminates Exhibit A. No separate termination notice for Exhibit A was required.

### D. Imaginuity's Failure to Perform

31. Following execution of the MSA and Exhibit A, Plaintiff expended hundreds of thousands of dollars under the agreements.

32. Despite these substantial expenditures, none of Imaginuity's promised outcomes materialized. There was no measurable growth. There was no reliable attribution or measurable ROI. The claimed AI and predictive optimization tools did not produce superior qualified leads or sales performance. The performance superiority claims proved to be false.

33. Plaintiff discovered that Imaginuity's pre-contractual representations were fraudulent. The representations regarding Imaginuity's proprietary technology, capabilities, staffing, and ability to deliver measurable business outcomes were false when made, and Imaginuity knew or should have known they were false.

### E. Termination of the MSA

34. Upon discovering that Imaginuity's promises were fraudulent, Plaintiff terminated the MSA in November 2024, which termination was provided for under the MSA.

35. Following termination, and solely to avoid immediate litigation and provide an opportunity for an orderly transition, Plaintiff agreed to work with Imaginuity until August 31, 2025.

### F. Imaginuity's Continued Failures During the Transition Period

36. During the post-termination transition period, Imaginuity again failed to deliver any of the promised outcomes. In fact, Imaginuity failed to perform any meaningful services.

37. Plaintiff has no record of Evan Meeks—Plaintiff's designated account representative—attending meetings, sending emails, or making phone calls associated with Imaginuity's engagement with Nation's. There is no documentation evidencing substantive work product, strategic planning, optimization, or account management of any kind during the transition period.

38. Imaginuity's complete abandonment of its contractual obligations during the transition period further demonstrates that its pre-contractual representations were false and that it never intended to perform its obligations.

**G. Imaginuity's Post-Termination Demand**

39. Following the termination of the MSA and the completion of the transition period, there was no communication between the parties for over six months.

40. On or about February 19, 2026, through counsel, Imaginuity asserted that despite Nation's termination of the MSA, the "Amended and Restated Exhibit A" (a subsequent version of Exhibit A dated January 1, 2025) had automatically renewed and that Nation's owes Imaginuity $141,570.

41. This assertion is legally defective for multiple reasons:

- The Amended and Restated Exhibit A expressly states that it is "incorporated in and governed by" the MSA;
- Exhibit A is not a standalone contract—it exists only through the MSA;
- Once notice to terminate the MSA was provided and received, no separate termination notice for Exhibit A was required;
- Exhibit A expressly provides that it may be "terminated in accordance with the terms of the Agreement" (i.e., the MSA); and
- Plaintiff properly terminated the MSA, which terminated all exhibits incorporated therein.

42. Imaginuity's continued assertion that Nation's failed to properly terminate Exhibit A—while omitting the controlling contractual structure—constitutes a continuation of the same deceptive conduct that induced Plaintiff to sign the MSA in the first instance.

**FIRST CAUSE OF ACTION**

**Fraudulent Inducement to Contract**

**(Against Imaginuity)**

43. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

44. Prior to execution of the MSA, Imaginuity made material representations to Plaintiff regarding Imaginuity's capabilities, technology, staffing, and ability to deliver measurable business outcomes, including that: (a) Imaginuity's services drive measurable growth for multi-location brands; (b) Imaginuity connects marketing spend to real business outcomes; (c) Imaginuity utilizes proprietary AI and predictive optimization tools that produce superior qualified leads and sales performance; and (d) Imaginuity provides reliable attribution and measurable ROI.

45. These representations were false. Imaginuity could not and did not deliver the promised outcomes.

46. Imaginuity knew these representations were false when made, or made them recklessly without regard for their truth or falsity.

47. Imaginuity made these representations with the intent to induce Plaintiff to enter into the MSA.

48. Plaintiff reasonably and justifiably relied on Imaginuity's representations in deciding to enter into the MSA. Plaintiff would not have entered into the MSA but for these representations.

49. As a direct and proximate result of Imaginuity's fraudulent inducement, Plaintiff has suffered damages in an amount to be proven at trial, but which amount exceeds the jurisdictional minimum, including but not limited to the hundreds of thousands of dollars paid under the MSA and its exhibits, lost business opportunities, and consequential damages.

## SECOND CAUSE OF ACTION

### Fraud

### (Against Imaginuity)

50. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

51. Imaginuity made false representations of material fact to Plaintiff, as set forth above.

52. Imaginuity knew these representations were false when made, or made them recklessly without regard for their truth or falsity.

53. Imaginuity made these representations with the intent to induce Plaintiff's reliance thereon.

54. Plaintiff reasonably and justifiably relied on Imaginuity's false representations.

55. As a direct and proximate result of Imaginuity's fraud, Plaintiff has suffered damages in an amount to be proven at trial, which amount exceeds the jurisdictional minimum.

56. Imaginuity's conduct was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of punitive damages in an amount sufficient to punish Imaginuity and deter similar conduct in the future.

## THIRD CAUSE OF ACTION

### Negligent Misrepresentation

### (Against Imaginuity)

57. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

58. Imaginuity made representations to Plaintiff regarding past or existing material facts, including Imaginuity's capabilities, technology, staffing, and track record of delivering measurable business outcomes for clients.

59. Imaginuity made these representations without reasonable grounds for believing them to be true.

60. Imaginuity made these representations with the intent to induce Plaintiff's reliance thereon.

61. Plaintiff reasonably and justifiably relied on Imaginuity's representations in entering into the MSA.

62. As a direct and proximate result of Imaginuity's negligent misrepresentations, Plaintiff has suffered damages in an amount to be proven at trial, but which amount exceeds the jurisdictional minimum.

## FOURTH CAUSE OF ACTION

### Rescission

### (Against Imaginuity)

63. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

64. Plaintiff's consent to enter into the MSA was obtained through fraud, as set forth above.

65. Pursuant to California Civil Code section 1689, Plaintiff is entitled to rescind the MSA and all exhibits thereto.

66. Plaintiff hereby seeks rescission of the MSA and all exhibits thereto, including Exhibit A and the Amended and Restated Exhibit A, and restitution of all consideration paid thereunder.

67. Upon rescission, Plaintiff is entitled to recover all sums paid to Imaginuity under the MSA and its exhibits.

### FIFTH CAUSE OF ACTION

### Breach of Contract

### (Against Imaginuity)

68. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

69. If the trier of fact determines that Plaintiff and Imaginuity entered into a valid and enforceable contract, i.e., the MSA, along with Exhibit A thereto, then Plaintiff performed all of its obligations under the MSA, or was excused from their performance.

70. Imaginuity breached the MSA by, among other things:

- Failing to provide the services described in the MSA and Exhibit A;
- Failing to consult with and assist Plaintiff in the development and execution of Plaintiff's marketing objectives;
- Failing to provide strategic leadership, day-to-day account management, and substantive work product;
- Failing to provide services "consistent with the standards prevailing in the industry," as warranted in Section 5.1(b) of the MSA; and
- Abandoning its obligations during the post-termination transition period.

71. As a direct and proximate result of Imaginuity's breach, Plaintiff has suffered damages in an amount to be proven at trial, but which amount exceeds the jurisdictional minimum.

## SIXTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against Imaginuity)

72. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

73. The MSA contained an implied covenant of good faith and fair dealing.

74. Imaginuity breached the implied covenant of good faith and fair dealing by, among other things:

- Inducing Plaintiff to enter into the MSA through false representations;
- Failing to perform meaningful services while accepting payment;
- Abandoning its obligations during the post-termination transition period;
- Asserting, six months after termination and the transition period, that Plaintiff owes $141,570 under an exhibit that was terminated with the MSA; and
- Engaging in a pattern of deceptive conduct designed to extract money from Plaintiff without providing commensurate value.

75. Imaginuity's conduct unfairly frustrated Plaintiff's right to receive the benefits of the MSA and violated the parties' reasonable expectations at the time of contracting.

76. As a direct and proximate result of Imaginuity's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be proven at trial, but believed to exceed the jurisdictional minimum.

## SEVENTH CAUSE OF ACTION

### Declaratory Relief

### (Against Imaginuity)

77. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

78. An actual controversy exists between Plaintiff and Imaginuity concerning the parties' rights and obligations under the MSA and its exhibits.

79. Specifically, Imaginuity contends that the Amended and Restated Exhibit A

1  automatically renewed and that Plaintiff owes $141,570 thereunder. Plaintiff contends that Exhibit
2  A was terminated when the MSA was terminated, that no separate termination notice for Exhibit A
3  was required, and that Plaintiff owes nothing to Imaginuity.

4      80.    Plaintiff seeks a judicial declaration that:

- The MSA was properly terminated by Plaintiff;
- Exhibit A and the Amended and Restated Exhibit A, being expressly "incorporated in and governed by" the MSA, were terminated when the MSA was terminated;
- No separate termination notice for Exhibit A was required;
- Plaintiff owes no amounts to Imaginuity under the MSA, Exhibit A, the Amended and Restated Exhibit A, or any other agreement between the parties; and
- Imaginuity's demand for $141,570 is without legal basis.

12     81.    A judicial declaration is necessary and appropriate to determine the parties' rights
13 and obligations and to resolve the present controversy.

## EIGHTH CAUSE OF ACTION

**Violations of California Business & Professions Code §§ 17200 and 17500**

**(Against Imaginuity)**

17     82.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though
18 fully set forth herein.

19     83.    California Business & Professions Code section 17200 prohibits any unlawful,
20 unfair, or fraudulent business act or practice, as well as unfair, deceptive, untrue, or misleading
21 advertising.

22     84.    California Business & Professions Code section 17500 prohibits untrue or
23 misleading statements made to induce the public to enter into any obligation to purchase goods or
24 services.

25     85.    Imaginuity engaged in unlawful, unfair, and fraudulent business acts and practices,
26 and made untrue and misleading statements, including but not limited to making false
27 representations regarding Imaginuity's capabilities, technology, staffing, and ability to deliver
28 measurable business outcomes, making false representations regarding Imaginuity's proprietary AI

and predictive optimization tools, inducing Plaintiff to enter into the MSA through fraudulent representations, accepting payment for services that were not performed or were performed inadequately, and asserting baseless claims for payment under a terminated agreement.

86. Imaginuity's conduct violates the "unlawful" prong of section 17200 because it constitutes fraud, negligent misrepresentation, and breach of contract under California law.

87. Imaginuity's conduct violates the "unfair" prong of section 17200 because the gravity of the harm to Plaintiff substantially outweighs any utility of Imaginuity's conduct.

88. Imaginuity's conduct violates the "fraudulent" prong of section 17200 because it is likely to deceive members of the public.

89. Imaginuity's conduct violates section 17500 because Imaginuity made untrue and misleading statements to induce Plaintiff to enter into the MSA.

90. As a direct and proximate result of Imaginuity's violations, Plaintiff has suffered injury in fact and lost money or property.

91. Plaintiff is entitled to restitution of all amounts paid to Imaginuity, injunctive relief, and all other relief available under sections 17200 and 17500.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nation's Foodservice, Inc. prays for judgment against Imaginuity as follows:

1. For compensatory damages in an amount to be proven at trial;

2. For rescission of the MSA and all exhibits thereto, including Exhibit A and the Amended and Restated Exhibit A;

3. For restitution of all amounts paid by Plaintiff to Imaginuity under the MSA and its exhibits;

///

///

///

4. For a judicial declaration that:

    a. The MSA was properly terminated by Plaintiff;

    b. Exhibit A and the Amended and Restated Exhibit A were terminated when the MSA was terminated;

    c. Plaintiff owes no amounts to Imaginuity under the MSA, Exhibit A, the Amended and Restated Exhibit A, or any other agreement; and

    d. Imaginuity's demand for $141,570 is without legal basis;

5. For punitive damages in an amount sufficient to punish Imaginuity and deter similar conduct;

6. For injunctive relief as appropriate;

7. For prejudgment interest at the maximum legal rate;

8. For costs of suit incurred herein;

9. For attorneys' fees to the extent permitted by law; and

10. For such other and further relief as the Court deems just and proper.

DATED: March 5, 2026　　　　　　　　　　　BOUTIN JONES INC.

By: /s/ *Michael G. Cross*
Michael G. Cross
Michael C. Hopkins

Attorneys for Plaintiff Nation's Food Service, Inc.